UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 21-cr-135 |
| VERSUS | CHIEF JUDGE HICKS |
| DAMIEN M MEDLOCK (01) | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Damien Medlock ("Defendant") is charged with one count of possession with intent to distribute methamphetamine and one count of distribution of methamphetamine. Before the court is Defendant's Motion to Suppress (Doc. 17), which seeks to suppress evidence seized from Defendant's home. Defendant argues that the search warrant for the home was not based on reliable and credible information. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The following facts were established. In February 2021, Detective Don Flores of the Sabine Parish Sheriff's Office began an investigation of Defendant for potential distribution of narcotics. A confidential informant ("CI") was arrested in an unrelated case, and he offered information on Defendant. The CI knew Defendant personally and said that he could purchase a pound of methamphetamine from Defendant. The CI told the detectives that the price for one pound of methamphetamine cut with other ingredients was $9,000. Tr. 5-6.

A controlled buy was set to take place on May 31, 2021. Deputy Jesse Branam and other members of the sheriff's office met with the CI before the buy. Tr. 51. The agents did not search the CI or his vehicle. Tr. 51. The agents gave him audio and video recording devices to record the buy and supplied him with $9,000 in cash, which had been photocopied for identification. Tr. 8, 51.

The CI met with Defendant in a residential area. Tr. 10. The CI purchased the methamphetamine, and Defendant told the CI that he could get more. Tr. 54. The agents were present for the buy and were able to see and hear the buy through the surveillance equipment. Tr. 8-9. The CI left, and agents arrested Defendant and brought him to an office called the "CID." Tr. 10-11.

Immediately after the buy, agents met with the CI in a predetermined location, and he handed over the methamphetamine he received from Defendant. Tr. 12. The CI told agents that he gave all of the $9,000 to Defendant. Tr. 29. Agents searched the CI's vehicle but did not find cash or other drugs. Tr. 12. In a post-buy interview, the CI told the agents that Defendant said the CI could purchase more methamphetamine from Defendant on the same date and that Defendant told him the meth was "close by." Tr. 12. The CI told Flores that he believed Defendant was referring to his residence, which was close to the site of the buy. Tr. 36.

At the CID, Defendant asked to use the restroom. Agent Nelson, who was monitoring Defendant, discovered that Defendant had attempted to flush cash in the toilet. Agent Nelson retrieved the cash, which totaled $2,700. The money was verified by

photocopy as the buy funds provided by the agents. No other cash was found on Defendant's person or in his vehicle. Tr. 13-14.

Detective Flores requested a search warrant for Defendant's house. The affidavit in support of the warrant included information regarding the controlled buy and information about Defendant's attempt to flush $2,700. Tr. 14-15. The warrant also stated:

> During the debrief [of the CI], the [CI] told me that [Defendant] offered to sell the [CI] more suspected methamphetamine on this same date. The [CI] told me in order for [Defendant] to provide them any more methamphetamine that [Defendant] would have to go back to his residence in Many, LA, which is located on Highland.

Doc. 22-1, p. 2. A state court judge signed the warrant. Tr. 16. Immediately after the warrant was signed, agents searched Defendant's house and found approximately 3.6 pounds of methamphetamine, along with packaging material, scales, and a ledger.

Defendant was transported from the CID to the Sabine Parish Jail, and Warden Berlion Sweet booked and interviewed Defendant. Tr. 38. When the agents returned from the search, Warden Sweet told them that Defendant said that the CI may have the rest of the buy funds that had not been recovered. Tr. 18. Agents contacted the CI, who returned around $4,000. The bills were verified as the buy funds originally supplied to the CI. The agents were never able to recover the remaining $2,300 of buy funds. Tr. 17-19.

Detective Flores testified that, prior to the controlled buy, there had never been any indication that the CI was not reliable. The CI gave accurate information as to where Defendant would be and the amount of methamphetamine he could buy. Tr. 19-20. The CI told the agents that he could make a controlled buy happen on Memorial Day, and he went through with it. Detective Flores claims that he did not have a reason to doubt the

CI's credibility at the time the search warrant for Defendant's house was signed. Tr. 32-33.

**The Motion to Suppress**

Defendant argues that the search warrant was constitutionally invalid for two reasons. First, Defendant asserts that the affidavit in support of the warrant did not contain a showing that the CI was reliable. Defendant contends that the agents should have realized that the CI was not credible when it became apparent that some of the buy funds were missing. Defendant argues that the statement in the affidavit that the CI was reliable was made with reckless disregard for the truth and that the affidavit should have disclosed the credibility issue for the state judge to consider in determining probable cause.

Second, Defendant asserts that the affidavit contained a false or misleading statement. The affidavit stated, "The [CI] told me in order for [Defendant] to provide him any more methamphetamine that [Defendant] would have to go back to his residence … ." Defendant points to Detective Flores' hearing testimony that Defendant told the CI that the meth was "close by" and did not specifically say it was at his residence. Defendant argues that the statement in the affidavit is false or highly misleading, and if it was excised from the affidavit there would not be probable cause to search the residence.

**Analysis**

### A. Leon Good Faith Exception

Probable cause questions are evaluated in two steps: First the court determines whether the good-faith exception to the exclusionary rule applies. If it does, the court need not reach the question of probable cause for the warrant "unless it presents a novel question

of law, resolution of which is necessary to guide future action by law enforcement officers and magistrates." United States v. Gentry, 941 F.3d 767, 779 (5th Cir. 2019); United States v. Payne, 341 F.3d 393, 399 (5th Cir. 2003). Where, as here, agents execute a search pursuant to a warrant, the exclusionary rule does not apply so long as the agents' reliance on the warrant was objectively reasonable and in good faith. United States v. Leon, 468 U.S. 897, 922 (1984); Gentry at 780.

There are four circumstances in which the good faith exception may not apply, one of which is relevant here: if the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth. U.S. v. Stalnaker, 571 F.3d 428, 435-436 (5th Cir. 2009). Defendant argues that there are two aspects of the affidavit in support of the warrant that the agents knew or should have known were false: (1) the statement that the CI was reliable and (2) the statement that Defendant would need to go to his residence to get more methamphetamine.

**B. Reliability of the CI**

When much of the information contained in a supporting affidavit comes from a confidential informant, a judge's search for probable cause must be guided by and measured against the standards set forth in Aguilar v. State of Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969). Under those standards, the judge must be told of the underlying circumstances and particular facts that support the confidential informant's conclusions. The judge must also be told why the informant should be considered reliable. United States v. Hyde, 574 F.3d 856, 862 (5th Cir. 1978).

The affidavit in this case did not provide much information regarding the reliability of the CI. The affidavit labeled him as a "Reliable Confidential Informant." The affidavit also confirmed that the CI knew where Defendant lived and accurately described the residence. But, more significantly, the agents independently corroborated the CI's information by conducting a controlled buy using physical surveillance as well as audio/video recording devices. As Detective Flores testified, the CI provided information as to where Defendant would be and the amount of methamphetamine the CI could buy from Defendant. Tr. 19-20. Furthermore, the agents already considered Defendant a "high value target" and knew that he had previously been stopped in New Mexico with several pounds of methamphetamine. Tr. 67-68.

Defendant argues that the agents should have known that the CI was unreliable because, by the time they applied for the search warrant, they should have at least suspected that the CI stole the missing buy funds. Accordingly, Defendant argues that the statement in the affidavit that the CI was reliable was false or made with reckless disregard for the truth.

Detective Flores testified that, after the buy, the CI met him at an agreed-upon location. He confirmed via GPS that the CI drove straight to the location. Tr. 27. The CI gave Flores the pound of methamphetamine. The CI and his vehicle were searched, and no additional cash or drugs were found. Tr. 27-28. The agents first became aware that some of the buy funds were missing after they caught Defendant attempting to flush $2,700 in cash down the toilet at the CID office. Tr. 14. Detective Flores testified that the agents theorized that Defendant was able to flush the rest of the cash or hide it in his vehicle. Tr.

39. Flores testified that the CI told him that he gave all of the $9,000 to Defendant, and Flores had no reason to doubt him. Tr. 39.

After the warrant was executed, the agents went to the detention center where Defendant was held. The agents spoke with the warden, who told them (for the first time) that Defendant said the CI gave him only $2,700. Tr. 40. Accordingly, at the time the agents applied for the warrant, they had no reason to doubt the reliability of the CI. He had previously given them information on other targets that the agents knew to be true. Tr. 66. In fact, the CI showed agents text messages from Defendant stating, "how much the meth was and stuff." Id.

The warrant did not omit any information that was known at the time about the missing buy funds. The affidavit disclosed the fact that $9,000 was given to Defendant, and he was found attempting to flush $2,700. That was all that was known by the agents at that time. The affidavit did not attempt to mislead the judge as to the missing funds or the reliability of the CI. This aspect of the motion to suppress lacks merit.

**C. CI's Statement in the Affidavit**

Defendant argues that the agent's affidavit falsely asserted that Defendant told the CI he had more meth at his residence. In Franks v. Delaware, the Supreme Court set out the legal principles that govern how courts are to address a defendant's allegations of false statements in warrant affidavits:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Page 7 of 10

> In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

Defendant argues that he never told the CI that he had methamphetamine at his house, and merely said that he had more methamphetamine "close by." But the affidavit in support of the warrant stated: "The RCI told me in order for Medlock to provide them any more methamphetamine that Medlock would have to go back to his residence …." Defendant asserts that if this statement were excised from the affidavit, there would be no information in the warrant linking Defendant's drug activity to the house.

The Government argues that the warrant did not state that Defendant made an explicit statement that he would go to his residence. Instead, Agent Flores relied on the CI's knowledge of the Defendant, including the CI's understanding that when Defendant said the methamphetamine was "close by," he meant it was at his residence.

The totality of the affidavit shows there was no reckless disregard for the truth or intent to mislead the judge into signing the warrant. The affidavit in support of the warrant explained that the agents were aware that Defendant "resided at 225 Highland by observing he and his vehicle at that residence." Govt. Ex. 1. The affidavit further provides: "The [CI] told me in order for [Defendant] to provide them any more methamphetamine that [Defendant] would have to go back to *his residence* in Many, LA, which is located on

Highland.  The [CI] described [Defendant's] residence to me as a two story home, which is consistent with where I am familiar with him residing." [Emphasis added.]

Defendant may well have said the drugs were "close by" instead of at his residence, but it was reasonable for the CI to interpret that to mean Defendant's residence on Highland, since that was close to the location of the drug deal.  Based on the agents' prior knowledge of Defendant, his residence, and his prior drug dealing activities, it was also reasonable for them to interpret "close by" to mean his residence.  It was neither an intentional falsity nor a reckless disregard for the truth for the agents to inadvertently substitute Defendant's residence for "close by."

In any event, if the words "his residence" are stricken from the warrant for being incorrect, the remaining parts of the affidavit are sufficient to establish probable cause that Defendant had additional methamphetamine at his residence.  The affidavit explained that agents knew where Defendant lived.  Tr. 43; Govt. Ex. 1.  Agents were not aware of any other residences or houses where Defendant would stay. Tr. 43.  If Defendant sold large quantities of methamphetamine near his residence (which he did), and Defendant represented that he had more drugs nearby, the agents had good reason to believe that Defendant was storing those drugs at his residence.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 17) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this

report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of February, 2022.

Mark L. Hornsby
U.S. Magistrate Judge